# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Conservatorship of SHIRLEY BITTNER.

---

SUZANNE BITTNER-KORBUS,

        Petitioner-Appellee,

v

STACEY BITTNER, Conservator for SHIRLEY
BITTNER,

        Respondent-Appellant.

FOR PUBLICATION
September 8, 2015
9:10 a.m.

No. 320688
Macomb Probate Court
LC No. 2013-211281-CA

---

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

GLEICHER, J.

Over Shirley Bittner's strenuous objection, the probate court appointed her daughter, Stacey Bittner, as conservator of Shirley Bittner's estate. Stacey Bittner also opposed the appointment. And so did the guardian ad litem appointed by the probate court, as well as the court-appointed psychologist who evaluated Shirley Bittner. The probate court nevertheless determined that Shirley Bittner's memory problems, arithmetic inadequacies, and mild cognitive deficits rendered her unable to manage her property and business affairs.

The probate court made no finding that Shirley Bittner's property would be wasted or dissipated absent appointment of a conservator, and overlooked consideration of the statutory directive that protective orders encourage "maximum self-reliance and independence" by restricting an individual's rights only to the extent necessary to safeguard an individual's estate. The evidence demonstrates that Shirley Bittner had proactively entered into a voluntary arrangement that adequately protected her assets and allowed her a meaningful measure of autonomy. We reverse.

## I.

Shirley Bittner is 74 years old. For convenience and clarity, in the balance of this opinion we will use her first name. We refer to her three daughters, Suzanne Bittner-Korbus, Shirleen Vencleave, and Stacey Bittner, as Suzanne, Shirleen, and Stacey.

-1-

Shirley's husband of more than fifty years passed away in October 2011. Stanley Bittner had single-handedly managed the couple's financial affairs. Newly widowed, Shirley developed serious health problems that required surgery, medications, and a temporary stay in a nursing home. She emerged from this ordeal with some confusion. Shirley decided to entrust the management of her finances to Suzanne, and granted Suzanne a durable power of attorney. Shirley revised her living trust to designate Suzanne as a co-trustee with authority to act independently.

In June 2013, Shirley petitioned the probate court for an accounting and a protective order. The petition averred that Suzanne had diverted a considerable amount of Shirley's money to herself, converted many of Shirley's accounts to joint tenancies, and withdrew funds without Shirley's authorization. Shirley revoked Suzanne's power of attorney and co-trustee status, the petition asserted, but Suzanne failed to return all the money she misappropriated and refused to "undo the joint tenancy creations." Shirley demanded an accounting, restoration of her assets, and imposition of a surcharge. In September 2013, the probate court entered a temporary restraining order and authorized discovery.

Two months later, Suzanne filed a petition seeking an appointment of a conservator for Shirley. The petition alleged that Shirley was unable to manage her property and business affairs effectively because of mental illness and mental deficiency. In support of this allegation, Suzanne claimed that "Shirley believes that all her money is gone, she is spending time with her daughter Shirleen and her grandson who have previously stolen from her, [and] she does not remember things that she did." Suzanne requested that a public administrator act as conservator of Shirley's estate.

Shirley responded to the petition by denying that she needed a conservator and insisting that the petition was "simply a last minute frivolous effort to distract from Petitioner Suzanne Bittner-Korbus' illegal behavior[.]" Further, Shirley's answer maintained, the petition lacked any "allegations that Shirley is not managing her assets appropriately or that her management is adversely affected by some 'mental illness.' "

The probate court ordered that Shirley undergo an independent medical examination with psychologist Terry Rudolph, Ph.D., and appointed attorney Helene Phillips as Shirley's guardian ad litem. Attorney Phillips met with Shirley on January 30, 2014. According to Phillips' report, Shirley expressed a correct understanding of a conservatorship and its attendant responsibilities, denied that she lacked the "mental capacity to handle her estate," and explained in detail the basis for her belief that Suzanne had helped herself to some of Shirley's assets. The report continued:

> I went over the financial documents form with her and on the most part she was able to provide me with the majority of her financial information. Her daughter Stac[e]y corrected a few accounts and added a few accounts. She informed me that she was paying all her own bills and that at times her daughter Stac[e]y was helping her.

Subsequently, Phillips interviewed Stacey. Phillips concluded:

-2-

After my meeting with Shirley Bittner, conversation with daughter Stac[e]y and conversations with both Suzanne's attorney and Shirley's attorney I do not believe that Shirley Bittner falls under the code's requirements of being a person who needs protection and is not in need of a conservator. I would recommend that the court not approve this conservatorship. I have some minor concerns with Shirley Bittner's full knowledge of her assets but I believe that there are enough safeguards in place with the POA and daughter Stac[e]y's help.

Dr. Rudolph interviewed Shirley in February 2014, and administered several psychological tests. He noted that Shirley had originally scheduled the exam for January 31 but forgot about it, and "only came to know of it during a conversation with her attorney." Dr. Rudolph summarized his encounter with Shirley as follows:

Today, Ms[.] Bittner was oriented to person. She was able to name her presumptive heirs. Ms[.] Bittner appeared to be able to identify her sources and amounts of monthly income, albeit that she was reading from prepared notes. She appeared to be aware of her real estate holdings.

Ms[.] Bittner was alert, verbal and oriented fully to person and place and generally to time. Her memory was in the low average to borderline range but her fund of general information was intact. She was poor at mental arithmetic. Ms[.] Bittner's interpretation of proverbs was superficial and literal and her reasoning was concrete. As a result, Ms[.] Bittner's formal judgment was marginal.

Testing indicates that Ms[.] Bittner functions in the low average range of cognitive abilities. She displayed an intact vocabulary and fund of general information along with some capacity to deal with abstract material. Ms[.] Bittner was very poor at mental arithmetic and quantitative facts. She was readily able to initiate and maintain verbal responses, but was very poor at the initiation and maintenance of motor responses. This does not bode well for her continuing to drive at this time. Ms[.] Bittner had some difficulty in registering and recalling new material.

Ms[.] Bittner has testamentary capacity and could make an informed decision about who she would want to assist her in handling her own affairs and make suggestions as to how she would want her assets used on her behalf. She has the capacity to live independently in her home for the time being and make daily decisions about activities, foods she wants to eat and clothes she wants to wear. Ms[.] Bittner's presentation during this evaluation, as well as her performance on objective testing indicates problems in consistently being able to initiate and carry out the tasks necessary to effectively manage her financial affairs. She has poor registration and recall, as well as poor arithmetic and quantitative skills which negatively impact her ability to be able to independently manage her financial resources.

His report concluded with the following recommendations:

1. Ms[.] Bittner has cognitive impairments brought about by Vascular Dementia, but not at a level of severity to be considered a Legally Incapacitated Person who requires the assistance of a Conservator to preserve her assets and assist her with her financial affairs.

2. Ms[.] Bittner has testamentary capacity and could make an informed decision about who she would want to handle her affairs and give some direction as to how she would want her assets used on her behalf.

3. Ms[.] Bittner has made arrangements for her daughter, Stac[e]y Bittner, to assist her with financial matters. This is within her current decision making capacity. It will probably be in her best interest to have someone who can provide her with checks and balances and support in the conduct of her financial affairs.

The probate court entertained argument regarding the conservatorship petition, granted it, and appointed Stacey as conservator. The court's bench opinion discredited Dr. Rudolph's recommendations, finding his opinions tainted by his inaccurate assumption that the standard at issue mirrored that for declaring a person "legally incapacitated." "[I]n my mind," the court elaborated, "he's talking about a legally incapacitated person as that term is defined in Section 1105 [MCL 700.1105(i)] meaning a person who is incapacitated so as to require the assistance of a Guardian. The standards for a Conservator are different."

The court then turned to the first factual requirement for appointment of a conservator, that an individual is "unable to manage property and business affairs effectively" for reasons such as mental illness and mental deficiency. Dr. Rudolph's report, the court emphasized, supports that Shirley falls within this rubric:

This is what Dr. Rudolph says on page 5, "Ms. Bittner's presentation during this evaluation, as well as her performance on objective testing indicate problems consistently being able to initiate and carry out the tasks necessary to effectively manage her financial affairs." He may not admit to it, but he nails the statutory language directly. He says that she has problems in being able to initiate and carry out the tasks necessary to effectively manage her financial affairs.

The court further noted Dr. Rudolph's findings that Shirley had "poor registration and recall," "poor arithmetic and quantitative skills," marginal judgment, and low-average cognitive abilities. "For all of those reasons," the court concluded, "I find that the condition here for Shirley Bittner fits squarely into Section 5401(3)(a) [MCL 700.5401(3)(a)], which is that the individual is unable to manage property and business affairs effectively. So, I will appoint a Conservator."

The conservatorship order grants Stacey Bittner "authority with respect to all assets of the estate," requires the filing of an annual account, forbids the sale, assignment, transfer or mortgage of any real estate without written court order, and prohibits the sale, "transfer, discount, assign[ment]" or encumbrance of any annuity or life insurance policies in which Shirley has an interest, absent a court order. On Shirley's behalf, Stacey now appeals the conservatorship order. Suzanne has filed a brief defending the conservatorship.

II.

We review a probate court's appointment or removal of a fiduciary for an abuse of discretion. *In re Williams Estate*, 133 Mich App 1, 11; 349 NW2d 247 (1984). An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). However, the probate court's findings of fact are reviewed for clear error. *In re Townsend Conservatorship*, 293 Mich App 182, 186; 809 NW2d 424 (2011). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* We consider issues of statutory interpretation de novo. *Id.*

III.

As a preliminary matter, we dispense with Suzanne's contentions that Stacey lacks standing to pursue this appeal, and that because Stacey filed her claim of appeal more than 21 days after entry of the conservatorship order we should have dismissed it. Suzanne raised both arguments in a previously-filed motion to dismiss. This Court held that pursuant to MCR 7.204(A)(3), the claim of appeal was timely filed. With respect to standing, this Court found that Suzanne had not established that Stacey lacked standing to bring this appeal in her capacity as conservator.[1] The law-of-the-case doctrine precludes this Court from revisiting these same issues. *People v White*, 307 Mich App 425, 428-429; 862 NW2d 1 (2014). In any event, pursuant to MCR 2.201(B)(1), a conservator "may sue in his or her own name without joining the party for whose benefit the action is brought." Thus, a conservator may file an appeal on behalf of his or her ward without naming the ward as an appellant.

IV.

Our consideration of Shirley's challenge to the probate court's order starts with the section of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, setting forth the standards governing conservatorship appointments. Under MCL 700.5401(1) (emphasis added), the court "*may* appoint a conservator or make another protective order" if the court determines that *both* of the following criteria are satisfied:

> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

> (b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money. [MCL 700.5401(3).]

---

[1] *In re Conservatorship of Shirley Bittner*, unpublished order of the Court of Appeals, entered October 10, 2014, (Docket No. 320688).

These prerequisites must be established by clear and convincing evidence. MCL 700.5406(7). The clear and convincing evidence standard is "the most demanding standard applied in civil cases." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Clear and convincing proof

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.* (quotation marks and citations omitted; alteration in original).]

Furthermore, in fashioning a conservatorship order,

> [t]he court shall exercise the authority conferred in this part to encourage the development of maximum self-reliance and independence of a protected individual and shall make protective orders only to the extent necessitated by the protected individual's mental and adaptive limitations and other conditions warranting the procedure. [MCL 700.5407(1).]

We agree that Dr. Rudolph likely conflated the standards for imposing a conservatorship and for appointing a guardian for a legally incapacitated person. We also agree that clear and convincing record evidence substantiated that Shirley's cognitive impairments give rise to "problems in consistently being able to initiate and carry out the tasks necessary to effectively manage her financial affairs." But this finding, standing alone, does not clearly and convincingly evidence a need for conservatorship.

The plain language of MCL 700.5401(3)(a) requires a determination that an "individual is unable to manage property and business affairs effectively," and that this disability arises from causes such as "mental illness" or "mental deficiency." We first consider whether clear and convincing evidence substantiated that Shirley Bittner was "unable" to perform the tasks necessary to "effectively" care for her assets.

Dr. Rudolph's finding meets this statutory criterion only to the extent that it demonstrates intermittent "problem[s]" with Shirley's ability to effectively manage her finances. Whether Dr. Rudolph would find Shirley consistently *unable* to conscientiously and competently manage her affairs remains unknown; Dr. Rudolph never addressed this specific question. Although Dr. Rudolph observed that Shirley has "problems in consistently" initiating and carrying out tasks relevant to her finances, he rendered no opinion regarding the real question: do Shirley Bittner's mental "deficiencies" render her "unable" to act as a responsible custodian for her funds? The sentence immediately following Dr. Rudolph's pronouncement regarding Shirley's "problems in consistently" initiating and carrying out pertinent tasks states: "She has poor registration and recall, as well as poor arithmetic and quantitative skills which *negatively impact* her ability to be able to independently manage her financial resources." (Emphasis added.) But do the problems that "negatively impact" Shirley's abilities rise to a level that render her "unable" to think and act appropriately regarding her finances?

The evidence supporting a finding of "inability" must be clear and convincing. Here, the probate court inferred that Dr. Rudolph would agree with the probate court's interpretation of Dr. Rudolph's findings. Given the demanding standard of proof applicable in this case, we are not so sure.

Difficulties with math and memory plague many elderly (and not so elderly) individuals. These irksome attendants to the aging process are not necessarily disabling. Poor subtraction skills and relatively low cognitive-ability testing scores hardly render a person mentally ill or mentally deficient, or even incapable of making rational decisions regarding one's bounty. In our view, clear and convincing evidence that a person "is unable to manage property and business affairs effectively" requires more than low marks on arithmetic or memory tests, or inconsistent ineptitude in balancing a checkbook. Further, that Shirley recognized her intellectual shortcomings and sought out Stacey's assistance demonstrates effective management skill rather than disability. We find the arrangement Stacey and Shirley made akin to an attorney's employment of support staff and electronic "tickler notes" to manage a docket, or to a patient's use of pill boxes and telephonic reminders to manage a medical regimen. The evidence substantiates that Shirley pays her bills on time, lives within her means, satisfactorily manages her household, and (according to both Phillips and Dr. Rudolph) maintains an adequate ability to make responsible decisions. That Shirley detected Suzanne's alleged theft of Shirley's money, arranged for Stacey's assistance with her finances, and sought an accounting bespeaks her intellectual competence. Accordingly, we are left with a definite and firm conviction that the probate court erred by finding that clear and convincing evidence satisfied MCL 700.5401(3)(a).

But even assuming that the probate court correctly concluded that clear and convincing evidence established Shirley's inability to manage her property and business affairs effectively, the probate court made no findings regarding MCL 700.5401(3)(b), which addresses whether Shirley's property "will be wasted or dissipated unless proper management is provided." Nor does clear and convincing evidence of record substantiate this prong of MCL 700.5401(3). Indeed, the evidence preponderates to the contrary.

The only evidence suggesting waste or dissipation of assets is that Suzanne, not Shirley, improperly transferred funds. We find no indication that under Shirley's management, money or property was mishandled. Rather, the record supports that Shirley responsibly sought Stacey's assistance and granted her a power of attorney. No facts presented to the probate court even hinted at fiscal mismanagement under this regime. As Phillips noted, the "safeguards in place with the POA and daughter Stac[e]y's help" weigh against a conservatorship. Despite Shirley's age-related mental infirmities, her financial affairs are in good order and well-controlled with Stacey's assistance. Thus, this record demonstrates that the necessary prerequisites for a conservatorship have not been fulfilled.

Further, we observe that the probate court failed to take into account the Legislature's command that it "shall exercise the authority conferred in this part to encourage the development of maximum self-reliance and independence of a protected individual and shall make protective orders only to the extent necessitated by the protected individual's mental and adaptive limitations and other conditions warranting the procedure." MCL 700.5407(1). This subsection of EPIC has yet to be construed by an appellate court. The Reporter's Comment provides: "Subsection (1) states a public policy that the court's authority over an adult's assets and

-7-

financial affairs should be the least intrusive possible while still providing needed protection. This policy is stated in numerous places throughout Part 4 of Article V." *Estates & Protected Individuals Code With Reporter's Commentary* (ICLE, 2015 ed), p 401. In a similar vein, the Reporter's Comment to MCL 700.5401 adds:

> It is important to appreciate that the court may provide assistance in alternative ways. Either a conservator may be appointed, or the court, without appointing a conservator, may issue an order of protection authorizing, directing, or ratifying some action for the management or protection of the individual's assets. The alternative approaches are available both for minors and for adults in need of protection. For adults, an order of protection without appointing a conservator may be consonant with the direction in MCL 700.5407(1) for the court to be as minimally intrusive as possible. [*Id*. at p 394.]

"While not binding," the Reporter's Comments to the EPIC "aid in the interpretation of a statute or rule." *In re Lundy Estate*, 291 Mich App 347, 355; 804 NW2d 773 (2011).

We draw from these sources the principle that when considering a petition for conservatorship, a probate court should approach the task from the perspective of respect for individual's right to acquire, enjoy, and dispose of her property as she sees fit. Any restrictions on this fundamental right must be narrowly tailored to an individual's specific capabilities and incapacities, bearing in mind the heightened evidentiary threshold for judicial interference. EPIC provides a probate court with tools for crafting orders that balance personal rights with demonstrated needs for protection. MCL 700.5408(1) provides, in relevant part:

> If it is established in a proper proceeding that a basis exists as described in [MCL 700.5401] for affecting an individual's property and business affairs, the court, *without appointing a conservator*, may authorize, direct, or ratify a transaction necessary or desirable to achieve a security, service, or care arrangement meeting the protected individual's foreseeable needs. Protective arrangements include, but are not limited to, payment, delivery, deposit, or retention of money or property; sale, mortgage, lease, or other transfer of property; entry into an annuity contract, contract for life care, deposit contract, or contract for training and education; or an addition to or establishment of a suitable trust. [Emphasis added.]

MCL 700.5419(1) allows for the creation of a limited conservatorship "specifying that only a part of the protected individual's property vests in the conservator[.]"

Read together, MCL 700.5407(3), MCL 700.5419(1), and MCL 500.700.5408 mandate that a court carefully and thoughtfully consider whether arrangements less intrusive than a conservatorship will adequately protect an individual's property as well as her autonomy.

Here, the evidence presented to the probate court established that Shirley's financial affairs were in good order and well-managed through her arrangement with Stacey. Although Shirley exhibited some deficits in memory, math, motor skills and executive functioning, she understood her sources of income and economic responsibilities. Shirley's grant of a durable power of attorney to Stacey confirms rather than negatives her ability to effectively manage her

property and business affairs. We are definitely and firmly convinced that the probate court erred by finding that the evidence satisfied that a conservatorship was appropriate under MCL 700.5401(3).

We reverse the order establishing a conservatorship and appointing a conservator, and remand for further proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Cynthia Diane Stephens