# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Conservatorship of STEPHEN MICHALAK.

STEPHEN PP MICHALAK,

Petitioner-Appellant,

v

CIRCLE OF LIFE SERVICES CONSERVATOR,

Respondent-Appellee.

UNPUBLISHED
December 1, 2016

No. 329198
Saginaw Probate Court
LC No. 15-132724-CA

Before: OWENS, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Over petitioner Stephen Michalak's objections, Saginaw Probate Court Judge Patrick J. McGraw appointed Barb Tomcal of Circle of Life Services, Inc. as full conservator of his estate on February 25, 2015. On September 4, 2015, the court denied Michalak's petition to terminate the conservatorship. Michalak now appeals as right from the order denying his petition to terminate the conservatorship. For the reasons explained in this opinion, we vacate the trial court's decision and we remand to the trial court for a determination of the least restrictive means of protecting Michalak's assets in light of Michalak's specific capabilities and limitations.

Michalak is 89 years old, and the father of two adult children. In 2013, Michalak's wife of 66 years passed away. Following her death, Michalak suffered from depression and spoke of committing suicide in order to be with his wife. In addition to his depression, Michalak had several other health problems commonly associated with aging, including motor problems as well as cognitive and memory difficulties. After a fall in his home in early 2014, Michalak spent several months in nursing home facilities. During that time, he signed a power of attorney appointing his son Ronald as his attorney in fact.

Upon his discharge from the nursing home in August of 2014, Michalak returned to his home to find that many of his valuables had been removed from his house by his son and, when he reviewed his finances, he discovered that his son had taken monetary "gifts" from Michalak's

-1-

estate in a total amount of $36,000 for himself, his sister and their respective spouses.[1]  Michalak revoked his son's power of attorney.

A few months later, Michalak's son filed a petition to have himself appointed as Michalak's conservator, claiming that—by reason of mental illness, mental deficiency, and physical illness or disability—Michalak was unable to manage his property and business affairs effectively, such that the property would be wasted or dissipated unless proper management was provided.  Michalak strongly opposed the appointment of a conservator, testifying at the hearing that he could manage his own affairs and that he had done so for some time.  No medical evidence regarding Michalak's mental capacity was presented at the hearing.  Both Michalak's son and son-in-law testified at the hearing; but, their testimony largely centered on Michalak's ability to care for himself at home, including things like cooking and driving.[2]  They suggested that his short term memory was "extremely poor" in recent years, but they offered no evidence to suggest that Michalak had mismanaged his assets.

Ultimately, the probate court granted the petition to establish a conservatorship.  The court made this appointment based on a finding of "mental deficiency."  The court declined to appoint Michalak's son as conservator given the "disharmony" in the family, and instead appointed Barb Tomcal of Circle of Life Services, Inc.  When making this appointment, the trial court specified that the appointment would only be for a period of one year because the court wanted "some more information," such as medical evaluations of Michalak.

Michalak later filed a petition to terminate the conservatorship.  In connection with this petition, he provided three medical opinions to the trial court.  The first, from a primary care physician, Dr. Brent Boggess, indicated that Michalak suffers from "mild dementia," but that he "is capable of living independently and managing his own financial affairs."  The second doctor, Dr. Usha Movva, a geriatric specialist, noted signs of decline in Michalak's memory and recommended neuropsychological testing to evaluate the extent of his memory loss and its effect on his day to day life.  The third doctor, neuropsychologist Dr. William MacInnes, subjected Michalak to a battery of tests and concluded that Michalak's performance on the tests "is indicative of some mild-to-moderate cognitive deficits" that did "not rise to the level of dementia."  While concluding that Michalak would "need assistance with tasks dependent on sequencing, mental speed, planning and short-term memory," MacInnes opined that Michalak could remain relatively independent and manage his finances with "some intervention and compensatory devices."  Notably, MacInnes opined that Michalak was "grossly capable of making informed decisions" and he recommended only that someone "*assist* him with managing finances."

---

[1] Michalak's son provided no justification for taking money from the estate other than to assert that he believed Michalak's estate could afford to make "gifts."

[2] Michalak's son also petitioned for the appointment of a guardian for Michalak.  The trial court granted this request.  The guardianship is not at issue in this appeal.

The trial court considered this medical evidence and determined that a full conservatorship remained appropriate. In doing so, the trial court dismissed Boggess's opinion primarily because the doctor did not detail what testing was employed. The court also largely dismissed Movva's opinion, stating that it was "not much help as it looks like she punted to a neuropsychologist." Turning to MacInnes's opinion, the trial court detailed many of MacInnes's observations and findings, including MacInnes's positive findings regarding Michalak's capabilities. The court described MacInnes's findings as "inconsistent" insofar as MacInnes described Michalak as capable of managing his finances but also recommended assistance in light of Michalak's mild to moderate cognitive deficits. Ultimately, because MacInnes opined that Michalak needed "assistance," the trial court determined that the full conservatorship remained appropriate. Notably, despite the medical evidence that Michalak could manage his finances with "assistance," the trial court did not consider whether some lesser intervention than a full conservatorship would be sufficient to protect Michalak's assets. Instead, the trial court reasoned that "it is clear if [MacInnes] is recommending assistance with finances" then the full conservatorship remains necessary. Michalak now appeals as of right.

On appeal, Michalak argues that the trial court erred by continuing the full conservatorship when unrefuted medical evidence indicated that Michalak was capable of making informed decisions and managing his finances. At a minimum, Michalak argues that the trial court should have acknowledged his remaining capabilities and considered less restrictive methods of protecting his assets than the continuation of a full conservatorship. Given the medical evidence of Michalak's ability to manage his finances with assistance, we find it appropriate to remand so that the trial court may determine the least restrictive means of protecting Michalak's assets in light of Michalak's specific capabilities and limitations.

"[A]ppeals from a probate court decision are on the record, not de novo." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). We review the probate court's factual findings for clear error. *In re Townsend Conservatorship*, 293 Mich App 182, 186; 809 NW2d 424 (2011). "A finding of fact is clearly erroneous when no evidence supports the finding or, on the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *King v Mich State Police Dep't*, 303 Mich App 162, 185; 841 NW2d 914 (2013). Issues involving statutory interpretation are reviewed de novo. *In re Conservatorship of Shirley Bittner*, 312 Mich App 227, 236; 879 NW2d 269 (2015).

The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* sets forth the standards for the appointment of a conservator and the termination of a conservatorship. A protected individual may petition to terminate a conservatorship pursuant to MCL 700.5431, which states:

> The protected individual, conservator, or another interested person may petition the court to terminate the conservatorship. A protected individual seeking termination is entitled to the same rights and procedures as in an original proceeding for a protective order. Upon determining, after notice and hearing, that the minority or disability of the protected individual has ceased, the court shall terminate the conservatorship. Upon termination, title to the estate property passes to the formerly protected individual or to successors subject to the

provision in the order for expenses of administration and to directions for the conservator to execute appropriate instruments to evidence the transfer.

According to the plain language of MCL 700.5431, the trial court shall terminate a conservatorship upon determining that the "disability of the protected individual has ceased." As defined by statute, the "protected individual" is "a minor or other individual for whom a conservator has been appointed or other protective order has been made as provided in [MCL 700.5401 *et seq*]." MCL 700.1106(*v*). A protected individual's disability has "ceased" when the disability has "come to an end" or "no longer continues." *Merriam-Webster's Collegiate Dictionary* (2014). For purposes of EPIC, the term "disability" refers to "cause for a protective order as described in [MCL 700.5401]." MCL 700.1103(n). Consequently, when considering a petition to terminate a conservatorship under MCL 700.5431, the trial court must determine whether cause for the conservatorship under MCL 700.5401 has come to an end.

Under MCL 700.5401(3), the court may appoint a conservator if the court determines both of the following:

(a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

(b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money.

In regards to the first requirement in particular, "[t]he plain language of MCL 700.5401(3)(a) requires a determination that an 'individual is unable to manage property and business affairs effectively,' and that this disability arises from causes such as 'mental illness' or 'mental deficiency.'" *In re Conservatorship of Shirley Bittner*, 312 Mich App at 238, quoting MCL 700.5401. See also *In re Townsend Conservatorship*, 293 Mich App at 188-189.

Whether a person is unable to manage funds involves consideration of whether an individual can conscientiously and competently manage her affairs, think and act appropriately regarding finances, and act as a responsible custodian for funds. See *In re Conservatorship of Shirley Bittner*, 312 Mich App at 238-239. Notably, in a case decided after the trial court's decisions in the present dispute, this Court has recently held that "problems" commonly associated with aging, such as lessened cognitive ability and memory difficulties, do not necessarily evince a mental deficiency or an inability to manage financial affairs. *Id.* at 238-240. In particular, this Court explained:

Difficulties with math and memory plague many elderly (and not so elderly) individuals. These irksome attendants to the aging process are not necessarily disabling. Poor subtraction skills and relatively low cognitive-ability testing scores hardly render a person mentally ill or mentally deficient, or even incapable of making rational decisions regarding one's bounty. In our view, clear

and convincing evidence that a person "is unable to manage property and business affairs effectively" requires more than low marks on arithmetic or memory tests, or inconsistent ineptitude in balancing a checkbook. [*Id.* at 239.]

As a related matter, the second prerequisite for a conservator under MCL 700.5401(3)(b), which addresses whether property "will be wasted or dissipated unless proper management is provided," requires consideration of the individual's financial affairs and how those finances have been handled, or mishandled, under the protected individual's control. See, e.g., *In re Conservatorship of Shirley Bittner*, 312 Mich App at 240-241.

Important to the present case, the *Bittner* Court held that the need for "assistance" in managing financial affairs does not necessarily demonstrate an inability to manage finances or a mishandling of finances, and a need for some "assistance" will not support the imposition of a full conservatorship where an individual remains capable of making responsible decisions.[3] See *id.* at 240. That is, this Court explained that, when determining whether there is cause for a conservatorship, the trial court must endeavor to maintain an individual's autonomy as much as possible, which necessitates consideration of the least restrictive means of protecting assets. *Id.* at 241-242. See also MCL 700.5407(1); MCL 700.5419(1); MCL 700.5408(1). For this reason, when considering a conservatorship:

> [A] probate court should approach the task from a perspective of respect for the individual's right to acquire, enjoy, and dispose of his or her property as the individual sees fit. Any restrictions on this fundamental right must be narrowly tailored to the individual's specific capabilities and incapacities, bearing in mind the heightened evidentiary threshold for judicial interference. [*In re Conservatorship of Shirley Bittner*, 312 Mich App at 242.]

This Court explained that the obligation to promote self-reliance and to be as minimally intrusive is a statutory requirement for the imposition of a conservatorship because when "[r]ead together, MCL 700.5407(1), MCL 700.5419(1), and MCL 700.5408 mandate that a court carefully and

---

[3] Factually, *Bittner* involved a 74-year-old protected individual who lost her husband of 50 years and then developed serious health issues that required surgery, medications, and a temporary stay in a nursing home. *In re Conservatorship of Shirley Bittner*, 312 Mich App at 230. "She emerged from this ordeal with some confusion" and, according to the medical evidence, the protected individual had "cognitive impairments brought about by Vascular Dementia," she had "poor registration and recall, as well as poor arithmetic and quantitative skills which negatively impact[ed] her ability to be able to independently manage her financial resources," and the examining physician expressed concerns about the individual's "full knowledge of her assets." *Id.* at 231-233. Nevertheless, the examining physician opined that the protected individual could make an "informed decision" and could handle her financial affairs with "support." *Id.* at 233-234. The trial court imposed a conservatorship based on the protected individual's cognitive difficulties. *Id.* at 235. However, this Court reversed, concluding that the evidence did not support the trial court's findings of a disability because, with some support, the protected individual remained capable of managing her affairs. *Id.* at 239-240, 243.

-5-

thoughtfully consider whether arrangements less intrusive than a conservatorship will adequately protect an individual's property as well as his or her autonomy." *Id.* at 242-243. Under these statutory provisions, less intrusive means of protecting assets include the creation of a limited conservatorship under MCL 700.5419(1), court action for a protected individual's needs under MCL 700.5408(1) without appointing a conservator, and authorization of a protected individual to function without the consent or supervision of a conservator under MCL 700.5407(1).

Turning to the present case, in light of the principles articulated in *Bittner* and Michalak's demonstrated capabilities, the trial court erred when it declined Michalak's request to terminate the full conservatorship without consideration of whether there were lesser means of interference available to protect Michalak's assets. That is, like the protected individual in *Bittner*, Michalak is an older adult whose purported "disability" is a mental deficiency in the form of cognitive impairments. Like the individual in *Bittner*, Michalak also went through a difficult period of adjustment following the death of a spouse. Further, while it is plain that Michalak suffers from mild-to-moderate cognitive difficulties and symptoms of depression, as in *Bittner*, there is unrefuted medical evidence that Michalak remains grossly capable of making informed decisions. Under *Bittner*'s holding, the fact that Michalak may need "assistance" with his finances does not necessarily warrant a full conservatorship under MCL 700.5401(3) without due consideration of lesser means of intervention. See *In re Conservatorship of Shirley Bittner*, 312 Mich App at 240-243.

In particular, MacInnes's evaluation following a battery of tests clearly details Michalak's mild-to-moderate cognitive difficulties and various other limitations associated with aging.[4] However, MacInnes's report specifies that Michalak is "grossly capable of making informed decisions" and MacInnes saw no reason why, with some "assistance," Michalak could not remain relatively independent and manage his finances. The trial court provided no reason for disregarding this expert testimony and in fact appeared to credit MacInnes's findings. Indeed, ultimately, the trial court concluded that Michalak's need for "assistance," as recommended by MacInnes, warranted the continuation of the full conservatorship. But, as we have discussed, *Bittner* made plain that the need for "assistance" is not necessarily cause for a full conservatorship under MCL 700.5401(3). See also MCL 700.5407(1). Quite simply, as in *Bittner*, Michalak faces some mild cognitive limitations, but the medical evidence strongly supports his contention that he remains able to manage his finances with the aid of less restrictive protection than the full conservatorship imposed by the trial court. In light of this evidence, before denying Michalak's request to terminate the full conservatorship, the trial court should have considered whether there were less restrictive means of interference which could have been narrowly tailored to Michalak's particular needs.

Aside from the medical evidence supporting his position, Michalak's own testimony as well as that of his son and son-in-law, also supports the conclusion that Michalak retains the

---

[4] We have focused on MacInnes's report because the trial court largely discounted the other medical opinions and we defer to the trial court's credibility assessment with regard to these other opinions.

ability to manage his finances, at least in part. In particular, as in *Bittner*, there is no evidence that Michalak ever mismanaged his finances. Rather, as in *Bittner*, the evidence demonstrates that Michalak lives within his means and paid his various bills, such as his utilities, on time. Cf. *In re Conservatorship of Shirley Bittner*, 312 Mich App at 240. His son and son-in-law testified to nothing that would indicate mismanagement of assets when funds were under Michalak's control.[5] Further, during his temporary stay in nursing homes, Michalak signed a power of attorney allowing others to manage his affairs. When he returned home, he reviewed his finances and, he was so cognizant of his own financial affairs, that he soon noticed his son's misappropriation of funds. He demanded the return of those funds, he revoked the power of attorney to prevent further mismanagement by his son, and he brought his son's unauthorized "gifts" to the attention of the guardian ad litem. This sort of financial awareness is not supportive of the conclusion that Michalak is "unable" to manage his affairs; rather, it evinces Michalak's intellectual competence. Cf. *In re Conservatorship of Shirley Bittner*, 312 Mich App at 240. Michalak also testified—and his testimony was uncontroverted—that he more recently employed a broker to help manage his investments. Again, the fact that Michalak no longer self-monitors his stocks, but has employed assistance, is an indication of his continuing ability to manage his affairs. Cf. *id.*

On the whole, the evidence—both medical evaluations and the testimony from Michalak and his family members—indicates nothing more than that Michalak, while grossly capable of making informed decisions, needs some *assistance* with managing his affairs. But, the need for assistance does not establish that he is "unable" to manage his finances within the meaning of MCL 700.5401(3)(a) and it does not necessarily provide cause for a full conservatorship. In other words, on a continuum between the need for a full conservatorship and no intervention at all, Michalak has clearly demonstrated that he falls somewhere in the middle. Consequently, before continuing the full conservatorship, in light of Michalak's demonstrated capabilities and his need for "assistance," the trial court should have considered lesser means of protecting Michalak's assets and narrowly tailored any intervention to Michalak's specific needs and capabilities.[6]

---

[5] At most, his son-in-law indicated that Michalak had refused to pay an attorney's bill. But no evidence was presented as to why he refused to pay this bill and thus there is no basis in the record to conclude that his reasoning was unsound or demonstrated an inability to manage his finances. Likewise, there was evidence from his son-in-law that Michalak has had difficulty writing out checks. But, it is not clear from his testimony whether this is simply a handwriting problem or something else. In any event, on its own, this difficulty writing checks does not demonstrate an inability to manage finances such that a full conservatorship would be necessary.

[6] In contrast, the dissent appears to adopt an all or nothing approach, concluding that the trial court should continue the full conservatorship, without consideration of lesser means of intervention, because Michalak had not shown that he could function completely independently. We do not read MCL 700.5431 as imposing such a stringent burden on a protected individual. As noted, EPIC defines a "disability" as "cause for a protective order as described in [MCL 700.5401]." In our judgment, "cause" for a protective order has "ceased" when a protected

For these reasons, we vacate the trial court's decision denying Michalak's motion to terminate the conservatorship and we remand with instructions that the court consider whether lesser means of intervention than a full conservatorship could be imposed to meet Michalak's needs while at the same time allowing him to manage his affairs with "assistance." The trial court should narrowly tailor any intervention to Michalak's specific capabilities and incapacities. See *In re Conservatorship of Shirley Bittner*, 312 Mich App at 242-243; MCL 700.5407(1); MCL 700.5419(1); MCL 700.5408.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

---

individual demonstrates that the order in question is overly intrusive and not tailored to the individual's capabilities, either because no intervention is needed or because some more limited intervention than a full conservatorship would suffice. In other words, there could never be "cause" for a protective order that is not narrowly tailored to an individual's specific capabilities and limitations. See MCL 700.5407(1). Moreover, MCL 700.5431 specifies that "[a] protected individual seeking termination is entitled to the same rights and procedures as in an original proceeding for a protective order." Given this directive, a trial court considering the termination of a full conservatorship must consider, not only whether no conservator is needed, but whether a limited conservatorship or other protective order would provide sufficient protection for the individual. See MCL 700.5407(1), MCL 700.5419(1); MCL 700.5408. In this respect, we note that we are not attempting to substitute our judgment for that of the trial court or to second-guess its assessment of the witnesses. Instead, our main concern is that, despite substantial evidence that Michalak could function with "assistance," the trial court continued a full conservatorship without even considering the possibility of lesser interventions. This was an abuse of discretion.