# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* GUARDIANSHIP OF DAVID P. VANPOPPELEN.

---

DENNIS J. VANPOPPELEN,

        Petitioner-Appellee,

v

IVY S. VANPOPPELEN and WYATT R. VANPOPPELEN,

        Appellants,

and

MARTIN J. BROSNAN, Guardian for DAVID P. VANPOPPELEN,

        Appellee.

UNPUBLISHED
December 4, 2018

No. 340224
Macomb Probate Court
LC No. 2017-223825-GA

---

*In re* CONSERVATORSHIP OF DAVID P. VANPOPPELEN.

---

VINCENT W. VANPOPPELEN,

        Petitioner-Appellee,

v

IVY S. VANPOPPELEN and WYATT R. VANPOPPELEN,

        Appellants,

and

No. 340226
Macomb Probate Court
LC No. 2017-223826-CA

-1-

MARTIN J. BROSNAN, Conservator for DAVID
P. VANPOPPELEN,

          Appellee.

---

Before:  MURRAY, C.J., and METER and GLEICHER, JJ.

MURRAY, C.J., (*concurring in part, dissenting in part*).

In these consolidated cases, and after conducting an evidentiary hearing, the trial court ruled that appellants Ivy VanPoppelen and Wyatt VanPoppelen, the children of David VanPoppelen, were not suitable to serve as guardian and conservator of their father.  Because the trial court articulated sufficient reasons for that decision, I would affirm on that issue.  I do, however, concur in the majority's decision to affirm the trial court's findings as to David's capacity to execute the March 2017 power of attorney.

In reviewing the probate court's decision for an abuse of discretion, *In re Conservatorship of Shirley Bittner*, 312 Mich App 227, 235; 879 NW2d 269 (2015), I would hold that the trial court's decision did not fall  "outside the range of reasonable and principled outcomes," *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017) (quotation marks and citation omitted).  Nor were any of the trial court's findings of fact clearly erroneous.  *In re Bittner*, 312 Mich App at 235-236.  Importantly, the purpose of these deferential standards of review is to ensure that the trial court—the court that is dealing with the parties at numerous hearings and thus most familiar with the intricacies of the case—is given substantial leeway in how the case is decided.  As we recently stated in *In re Redd Guardianship*, 321 Mich App 398, 412; 909 NW2d 289 (2017), "we 'will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court.' "[1]

In determining whether Wyatt or Ivy were suitable to appoint to either position, the probate court had to find by a preponderance of the evidence that either was "suitable" to serve, or in other words, that either was "qualified and able to provide for [David's] care, custody and control." *In re Redd*, 321 Mich App at 408.  And, in order to provide that "care and custody," one must be able to, amongst other things, provide for the ward's "financial, medical, and social well-being" and "make an accounting to the court or other interested individuals." *Id*. at 407, citing MCL 700.5314.

The trial court determined that both Wyatt and Ivy were not suitable to appoint as guardian and conservator because of their age and their likely inability to withstand the pressures of competing family members.  The majority concludes that this reasoning was insufficient to preclude their appointment, and remands for further factual development.  I would agree with

---

[1]  Quoting *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

-2-

this resolution if the trial court's ruling could be viewed as limited to the mere fact of Wyatt and Ivy's age, but the record and inferences that the trial court could make from that record, do not allow such a view. Instead, a review of the record, coupled with application of the appropriate standards of review, requires that the trial court's findings and decision be affirmed.

With respect to Ivy and Wyatt, the court found that although they were good persons who loved their father, they were young and inexperienced, and they could not be relied on to resist pressure from the competing parties and to act in David's best interests. This finding is supported by evidence that Wyatt and Ivy remained subject to June's influence, that they were relatively inexperienced in life, and that the parties were acrimonious throughout the proceedings. These conclusions were properly made from direct evidence, as well as inferences from the evidence that the probate court was permitted to make, and with which we cannot properly interfere.[2]

Specifically, Wyatt testified that June continued to pay for his cell phone and automobile insurance after he graduated from college, and that she assumed responsibility for $94,000 in student loans that he had incurred. Additionally, Wyatt's income was not sufficient to ensure his independence, and he had not yet held any position of significant responsibility. Ivy was a college sophomore who was not living independently. Neither presented any evidence that they were experienced with money management, particularly significant assets like those held by David. Nor was there any evidence that either had performed any matters for David in a representative capacity, formal or otherwise. This evidence (or the lack thereof)[3] permitted the probate court to rule as it did after considering all the testimony presented during the hearing. It was certainly not the only conclusion that could have been made—a point the majority aptly makes—but the evidence and inferences from that evidence supported the trial court's finding that Wyatt and Ivy, despite their good intentions, were not ready to protect David's best interests if June interfered.

In a somewhat different context, our Court previously utilized a similar rationale. In *In re Brody*, the petitioner (Robert) argued that he should have been appointed conservator over his wife's estate, rather than a third party. The trial court had ruled that Robert was unqualified to be appointed conservator in part because he had to rely on others to help him with his own financial decisions and was subject to control from family members. *In re Brody*, 321 Mich App at 342. Our Court affirmed, holding:

> Witnesses also testified that Jay exhibited controlling behavior over Robert. Given these facts regarding the relationship between Jay and Robert, it was not unreasonable for the probate court to infer that Jay would attempt to influence Robert's decision-making with respect to Rhea's estate in the future. The probate

---

[2] Additionally, the probate court only had to state "[b]rief, definite, and pertinent findings." MCR 2.517(A)(2). See also MCR 5.001(A).

[3] It was petitioners' burden to prove that they were suitable. *In re Redd*, 321 Mich App at 411.

court did not abuse its discretion when it selected Lyneis, an independent fiduciary, over Robert as conservator.  [*Id*.]

Thus, the "age factor," for lack of a better term, is not simply the age of the person, but is a recognition that some people at either a younger age (Ivy and Wyatt) or older age (Robert in *In re Brody*) are not experienced enough or strong enough to make significant decisions or stand up to family pressures.  Since the probate court's conclusion was precisely that when it came to Ivy and Wyatt's suitability, and the evidence supported that decision under the "broad deference" required to be given to the court's findings, *id*., I would affirm.

/s/ Christopher M. Murray

-4-