*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RICHARD LEE CONRAD, a legally
incapacitated person.

---

JOSEPHINE CONRAD,

Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Respondent-Appellant.

UNPUBLISHED
May 19, 2022

No. 356598
Shiawassee Probate Court
LC No. 21-039415-PO

---

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Respondent, Department of Health and Human Services (DHHS), appeals as of right the probate court's March 3, 2021 protective order issued under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. For the reasons discussed below, we vacate the order and remand to the probate court for further proceedings in accordance with this opinion.

## I. BACKGROUND

Richard Conrad fell and broke his leg. His wife, petitioner Josephine Conrad, who resided in the couple's home, was unable to care for Richard at home following his injury. Richard entered Durand Senior Care and Rehab for physical therapy and treatment. About a month later, on February 17, 2021, Josephine petitioned the probate court for a protective order.[1] Josephine

---

[1] At the time the petition for a protective order was filed, a Medicaid application had not been submitted by or on behalf of Richard to cover the costs of the facility. DHHS contends that Josephine signed an application for Medicaid benefits on behalf of Richard on February 26, 2021,

alleged that a protective order was needed because Richard was unable to manage his property and business affairs because of "dementia or a cognitive impairment and he just received a pacemaker." She alleged that a protective order was necessary to provide money and/or assets for her own support, care, and welfare. Subsequently, over DHHS's objections, the probate court granted the petition, finding satisfaction of the relevant criteria in EPIC. The court issued a protective order that awarded Richard $60 monthly from his income and transferred the remainder of the couple's combined income, as well as Richard's individual and joint interests in assets, to Josephine for her own use and benefit, and terminated Richard's spousal rights in regard to any potential future inheritance.

In this appeal, DHHS argues that the probate court abused its discretion by issuing the protective order because Josephine failed to establish the necessary criteria for a protective order of support under MCL 700.5401.

## II. LEGAL FRAMEWORK

### A. STANDARD OF REVIEW

Questions of statutory interpretation are reviewed de novo. *In re Vansach Estate*, 324 Mich App 371, 385; 922 NW2d 136 (2018). Appeals from a probate court decision are on the record, not de novo. *Id*. A trial court's factual findings are reviewed for clear error, while its dispositional rulings, including a decision to enter a protective order, are reviewed for an abuse of discretion. *Id*. "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bittner Conservatorship*, 312 Mich App 227, 236; 879 NW2d 269 (2015) (quotation marks and citation omitted). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 235. A trial court may also abuse its discretion by failing to operate within the correct legal framework. *Vansach*, 324 Mich App at 385.

### B. ARTICLE V OF EPIC

Article V of EPIC, MCL 700.5101 *et seq*., provides protection for individuals under disability. The standards governing protective orders are described in MCL 700.5401. Under MCL 700.5401(1), the court "may appoint a conservator or make another protective order for cause" in relation to an individual's estate and affairs if the court determines that both of the following criteria are satisfied:

> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or

---

nine days after she filed the petition for a protective order, but that she did not submit the application for Medicaid benefits, which included the March 3, 2021 protective order of support, until April 21, 2021.

disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

(b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money. [MCL 700.5401(3).]

Before entering a protective order, the probate court is first required to determine by clear and convincing evidence that the protected individual meets these requirements. MCL 700.5406(7); *Vansach*, 324 Mich App at 383-384. "The most demanding standard in civil cases is the clear-and-convincing evidence standard." *In re Schroeder Estate*, 335 Mich App 107, 114; 966 NW2d 209 (2020) (citation omitted). "Evidence is clear and convincing when it produces a firm belief in the truth of the allegations that a party is attempting to establish." *Id*. "The standard has also been described as equating to evidence that is as clear, directly, weighty, and convincing as to enable a fact-finder, absent any hesitancy, to come to a definitive conclusion regarding the truth of the precise facts at issue." *Id*.

C. *VANSACH*

In the consolidated appeals in *Vansach*, each probate court entered a protective order under EPIC that required all of the income of the individual institutionalized in a nursing home and receiving Medicaid benefits to be paid to the respective spouses who remained in the community. *Vansach*, 324 Mich App at 376. This Court said, relevant to the issues raised in this appeal:

In considering whether money is "needed" for the "support" to which a spouse is "entitled," we acknowledge that the duty to support a spouse is not discharged "by furnishing only enough money to buy sufficient food to keep body and soul together. We are not, therefore, suggesting that a showing of need under MCL 700.5401(3)(b) requires a determination that the spouse requesting support lacks even the basic necessities of life. However, we emphasize that an entitlement to support does not necessarily guarantee that a spouse may enjoy a particular standard of living regardless of the protected individual's means and circumstances. To the contrary, in Michigan, the obligation to support a spouse is contingent on the assumption that the spouse providing support has sufficient financial ability to provide that assistance. And the level of "support" required is generally recognized as being that which is "reasonably consistent" with the supporting spouse's "own means and station." In other words, it cannot reasonably be expected that one spouse should become impoverished in order for the other spouse to maintain his or her standard of living.

In the context of a petition for a protective order under MCL 700.5401(3)(b), it follows that a finding that money is needed for a spouse entitled to support from the protected individual requires consideration of the requesting spouse's needs and resources as well as the protected individual's needs and circumstances. The spouse requesting support must make a showing of need—not merely a desire to maintain a current standard of living without regard to the other

spouse's circumstances. Whether the community spouse[2] is "entitled" to "support" will depend on all the facts and circumstances, including the incapacitated individual's financial means and ability to provide assistance. For instance, when crafting a protective order, the probate court should consider the protected individual's "foreseeable needs," the interests of the protected individual's creditors, and the interests of the protected individual's dependents. A probate court considering a protective order should also bear in mind that the protected individual has the right to acquire, enjoy, and dispose of his or her own property. Weighing the various concerns will obviously depend on the facts of each case, but a protected individual's rights and interests can never be totally disregarded in an effort to provide for his or her spouse. In other words, a community spouse cannot make a showing of "need" and is not "entitled to the [incapacitated] individual's support" merely to maintain his or her current lifestyle when providing money to the spouse will leave the incapacitated individual entirely destitute and unable to meet his or her own needs. [*Vansach*, 324 Mich App at 394-396 (citations omitted).]

## III. ANALYSIS

### A. MCL 700.5401(3)(A)—CAPACITY TO MANAGE PROPERTY AND BUSINESS AFFAIRS EFFECTIVELY

DHHS argues that Josephine failed to present clear and convincing evidence that Richard was unable to manage his property and business affairs effectively for reasons such as mental illness, mental deficiency, or physical illness or disability. MCL 700.5401(3)(a). Josephine alleged in the petition that Richard was unable to manage his property and business affairs sufficiently because he suffered from "dementia or a cognitive impairment and he just received a pacemaker." The attorney appointed as Richard's guardian ad litem (GAL) prepared a report and indicated that he had not been able to meet with Richard in person because of COVID concerns and so he spoke with Richard via Zoom. The GAL said that during the Zoom meeting Richard "did not have any understanding of the petition or its purpose" and was "not very verbal." The GAL said that Richard could identify himself but could not identify his surroundings or where he was or why he was there, and did not understand how the proposed order would affect his rights or ownership of the parties' assets. The GAL said that Richard's diagnosis was dementia, and that he had a broken leg and was not cooperating in his physical therapy. The GAL said that Richard was currently unable to manage his own property or financial affairs because of his medical condition and need for treatment. DHHS did not present any evidence to counter the GAL's report.

---

[2] *Vansach* involved the issuance of orders of support under EPIC after an initial Medicaid eligibility determination had been made. This Court explained that "Title XIX of the Social Security Act is commonly referred to as the Medicaid act. In the Medicaid context, and as used in this opinion, the term "community spouse" refers to a spouse living at home, while the term "institutionalized spouse" refers to a spouse who has been institutionalized, usually in a nursing home." *Vansach*, 324 Mich App at 376 n 2.

No medical reports were presented in the probate court regarding Richard's purported diagnosis of dementia. The allegations of "dementia or other cognitive impairment" in the petition are not evidence. The assertions of the GAL, who did not meet with Richard in person, who did not assert that he had performed an investigation beyond a Zoom meeting with Richard and a telephone conversation with Josephine and review of her petition, and who is presumably not a medical professional, were not supported by any medical reports and do not constitute clear and convincing evidence that Richard suffered from dementia and was unable to manage his property and business affairs. See *Schroeder*, 335 Mich App at 119. While Richard may, in fact, suffer from dementia, the probate court did not make any findings of fact to support its determination that Richard was "unable to manage property and business affairs effectively for reason of physical illness or disability." On this record it is not clear that Richard suffered from dementia or any other ailments, nor is it clear that any ailments rendered him unable to manage his property or business affairs effectively. Inability to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, or physical illness or disability is one of the prerequisites for a protective order. The probate court erred because it failed to make sufficient findings of fact to allow for meaningful appellate review. See *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010) (reversing and remanding because the trial court failed "to make findings of fact that [were] susceptible to appellate review"). Under these circumstances, we vacate the protective order and remand to the probate court for the court to articulate reviewable findings of fact considering the circumstances as they actually exist at the time of remand. See *Schroeder*, 335 Mich App at 123 (holding that where circumstances have likely evolved during the pendency of the appeal involving care, on remand the probate court shall consider the circumstances as they actually exist). On remand, the probate court must permit the parties to file additional evidence that will enable the court to make findings sufficient to enable meaningful appellate review. Additionally, given that COVID restrictions have been lifted, the probate court is to direct the GAL to prepare an updated report after complying with the duties under MCL 700.5305(1), which include, among others, the duty to personally visit the individual. MCL 700.5305(1)(a).

## B. MCL 700.5401(3)(B)—MONEY NEEDED FOR SUPPORT, CARE, AND WELFARE

As relevant to this case, MCL 700.5401(3)(b) makes clear that a protective order can be entered when money is "needed" for someone "entitled to the individual's support," provided that the entry of a protective order is "necessary to obtain or provide money." "Plainly, to warrant a protective order under this provision, there must be a showing of need." *Vansach*, 324 Mich App at 394. DHHS argues that there was not clear and convincing evidence that Josephine needed additional support from Richard.[3] DHHS argues that the probate court did not consider Richard's needs for his assets and income. It argues that by awarding Richard just $60 per month from his income, the probate court effectively looked to taxpayers to fund Richard's care through a governmental program—Medicaid—that is intended for the needy, not for persons with assets and income that they can use to pay for their own care. DHHS argues that because Richard had not *already* been granted Medicaid benefits, the probate court could not consider Medicaid coverage

---

[3] DHHS does not contest that Josephine is a person entitled to support from Richard. A married person is generally entitled to support from their spouse. *Vansach*, 324 Mich App at 394.

to pay expenses as a reason to distribute an inequitable amount to Josephine. DHHS argues that Josephine was Richard's attorney-in-fact and had the ability to access any asset or portions of income without a protective order.

The only evidence offered in this case was a budget prepared by Josephine and the GAL's report. The petition alleged that all of the parties' combined income was necessary to support the budget submitted by Josephine. The petition alleged Josephine's needs were greater than Richard's because Richard's "needs were being fully met in his current living arrangement at the nursing facility,"[4] and because she "is reasonably expected to have a considerably longer lifespan than [Richard] and will require more assets to sustain herself." The GAL stated that he saw "no reason to alter or modify the relief requested" and that "it seems that the income and assets owned and received by the parties are necessary for the care and support of" Josephine. The GAL said that he reviewed the budget and that "it seems clear, without the relief requested [Josephine] would become destitute and unable to manage her daily living needs." The GAL said that the "parties' income and assets are necessary for the necessary support, care, needs and welfare of [Josephine]." The GAL report did not mention monetary figures, nor did it mention Richard's needs.

The entirety of the probate court's oral ruling was: "I think the needs have been flushed out. I think the distribution is reasonable. I've looked at the budget." The court awarded Josephine sole ownership of the assets owned by Richard individually or jointly with Josephine and ordered that the assets be transferred to Josephine for her own use and benefit. The assets identified by Josephine in the petition were valued by her at $389,831.[5] In addition to the assets identified by Josephine, the court also awarded Josephine "[a]ll other assets owned by" Josephine and/or Richard. The order also awarded Josephine all of Richard's monthly income of $1,535.46, except for $60 per month that the court awarded to Richard "for his own use and benefit and so that he may contribute to the costs of future care, needs, and obligations." The order stated that the court found by clear and convincing evidence that Josephine had met her burden to show cause and necessity for entry of the protective order, but the court made no findings of fact to support the finding. The order stated that the court "has considered the interests of the individual and his needs and obligation to contribute toward the costs of his own care in deciding whether and how much to award to the Petitioner" and that the court determined that "the individual has the financial means and ability to provide financial assistance to the Petitioner; and that the foreseeable needs of the Individual, the Individual's creditors, and the Petitioner's basic, but not excessive or merely desirable, needs have been considered," but no evidence was presented with respect to Richard's needs or the needs of his creditors, and the court did not make any findings of fact to support this finding. The court relied solely on the budget presented by Josephine when finding that the "needs have been flushed out." The court did not make any other factual findings with respect to Josephine's needs. The budget prepared by Josephine considered only Josephine's purported expenses and was not supported by any evidence. The court determined that it was in the best interests of Richard and his dependents to transfer all of the couple's assets to Josephine, but the court did not make factual findings to support the determination. The protective order generally

_____

[4] The petition did not indicate how Richard's "needs" at the nursing home were being funded. The petition alleged that Richard "may need to apply for Medicaid assistance in the near future."

[5] No supporting evidence of the couple's assets or valuation of the assets was provided.

states that the court found that the criteria required under MCL 700.5401 in order to issue a protective order had been met, but the court made no findings of fact. Again, the probate court erred because it failed to make sufficient findings of fact to allow for meaningful appellate review, *Woodington*, 288 Mich App at 357, and remand is warranted. It appears from DHHS's argument on appeal that circumstances have likely evolved during the pendency of this appeal regarding Medicaid coverage. Again, on remand, the probate court shall consider the circumstances as they actually exist. *Schroeder*, 335 Mich App at 123.

## C. THE TRANSFER OF ASSETS

DHHS argues that the probate court's transfer of the assets Richard owned jointly with Josephine on the basis of need under MCL 700.5401 failed to identify the interests being transferred and the value of those assets. *Schroeder*, 335 Mich App at 124. Here, the petition included a list of property owned by Richard individually or by Richard and Josephine jointly, and the purported value of the assets. The petition also indicated that the couple's property was not limited to the property listed in the petition. The protective order awarded Josephine sole ownership of the assets Richard owned individually, as well as the assets Richard owned jointly with Josephine.

DHHS's argument mirrors the argument the DHHS made in *Schroeder*. In *Schroeder*, the DHHS argued that the probate court only had authority over the estate and assets of the protected individuals, not their spouses. *Id*. The DHHS contended that in setting the amount or value of transferred assets, a probate court must accurately determine whether the protected individual actually possesses that amount to transfer. *Id*. In the companion case in *Schroeder*, the DHHS asserted that " '[w]hen a probate court order inflates the amount that the protected individual is transferring to an amount that is more than he owns, it will be in conflict with the amounts reported and verified in the filed Medicaid application,' and if 'the application amounts and the court order cannot be reconciled it creates a conflict in making a Medicaid determination.' " *Id*. (alteration in original). This Court noted that the probate court had ordered the individuals to transfer their interests in assets owned individually and jointly with their spouses, as follows:

> With respect to Mr. Schroeder, the probate court valued the asset transfer at $450,000. In the petition, Mr. Schroeder's son claimed that there was $203,400 in real property and $737,000 in personal property for a grand total of $940,000 in assets. With respect to Mr. Almy, the probate court valued the asset transfer at $500,000. In the petition, Mrs. Almy claimed that there was $275,400 in real property and $718,000 in personal property for a grand total of $993,400 in assets. [*Id*. at 124.]

This Court said that the DHHS "did not truly assail the values offered below or offer evidence to the contrary; the issue has essentially been developed on appeal." *Id*. This Court continued:

> That said, there was little to no supporting evidence regarding or identifying specific asset interests and values—just conclusory assertions. We hold that when a probate court acts to transfer property upon satisfaction of the prerequisites in MCL 700.5401 relative to need, it is imperative for the court to identify the interests

being transferred and the value of those interests.  Although there is no specific language in EPIC demanding that information, when a court is examining the financial needs of spouses and orders asset transfers on the basis of those needs, a valuation of the assets or interests therein is an inescapable and necessary component of the analysis.  To the extent that asset transfers are again considered on remand, the probate court shall require evidence concerning the nature of the interest held in the particular assets and the value of the interest in the assets.  [*Id*. at 124-125.]

In the present case, as in *Schroeder*, there was no supporting evidence of specific asset interests and values—only the allegations in the petition—which the probate court incorporated into the protective order.  The probate court failed to make findings of fact sufficient to allow this Court to conduct meaningful appellate review of the court's decision to transfer assets to Josephine.  "To the extent that asset transfers are again considered on remand, the probate court shall require evidence concerning the nature of the interest held in the particular assets and the value of the interest in the assets."  *Id*. at 125.

The protective order is vacated, and we remand to the probate court for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly