*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Conservatorship of IL.

PAUL LETISSIER,

        Appellant/Cross-Appellee,

v

IL, a legally protected individual, THOMAS BRENNAN FRASER, MICHELLE HAIGHT, and RENEE BOOGREN,

        Appellees,

and

TERESE SHELLEDY,

        Appellee/Cross-Appellant.

UNPUBLISHED
May 20, 2026
9:07 AM

No. 371470
Oakland Probate Court
LC No. 2021-399077-CA

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Appellant, Paul LeTissier, appeals as of right the probate court's order removing him as conservator for his mother, IL, and replacing him with appellee Thomas Brennan Fraser. Appellee, Terese Shelledy, cross-appeals. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

IL has four adult children: LeTissier, Michell Haight, Renee Boogren, and Shelledy. The siblings have a contentious relationship and split into essentially two factions: LeTissier and Shelledy, and Haight and Boogren. After Haight petitioned to appoint a conservator for IL, the siblings went to arbitration because they could not agree who should assume the role. They ultimately entered into a settlement agreement that made LeTissier conservator and Shelledy

guardian. But as time went on, tensions between the siblings impacted LeTissier's actions as conservator, resulting in Haight and Boorgen having to take extraordinary steps to review IL's financial records supporting his first and second annual accountings.

Haight and Boorgen raised objections to the accountings, questioning certain expenditures LeTissier approved. The most significant expenditure involved amounts paid to John J. Cooper, as IL's attorney. LeTissier had a personal relationship with Cooper, Cooper was not an experienced probate attorney, and, the majority of the time, Cooper simply supported whatever actions LeTissier had taken or recommended. Cooper initially charged a rate of $250 per hour, but doubled his rate to $500 per hour, which LeTissier approved. Additional challenged expenditures included monetary gifts to LeTissier and his family and Shelledy and her family that were not similarly given to Haight, Boogren, or their families. Moreover, there was concern over a $170,000 loan IL had made for LeTissier in 2019; the promissory note underlying the loan did not impose any interest and did not establish a payment schedule beyond making payment due, at the latest, within three days of IL's death.

Ultimately, Haight petitioned to remove LeTissier as conservator, primarily on the grounds that he violated his fiduciary duties by not producing records relating to his annual accountings in a timely manner and for approving Cooper's unreasonable attorney fees. After hearing testimony over four days, the probate court found grounds to remove LeTissier. It also believed that his loan made him both a creditor and debtor to the estate, which created a conflict of interest. The probate court thus removed LeTissier and appointed Fraser as successor conservator.[1] LeTissier now appeals.

## II. ARBITRATION

LeTissier first argues that the probate court erred when it denied his request for arbitration. Haight also argues this Court lacks jurisdiction over this claim. We disagree with both arguments.

## A. STANDARDS OF REVIEW

We review the probate court's decision on whether this issue was subject to arbitration de novo. *In re Nestorovski Estate*, 283 Mich App 177, 184; 769 NW2d 720 (2009). We also review the issue of whether this Court has jurisdiction over a matter de novo. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009).

## B. ANALYSIS

Haight initially argues that this Court lacks jurisdiction over this issue because it involves reviewing the probate court's earlier, nonfinal order denying LeTissier's request for arbitration. Haight alleges that LeTissier was obligated to seek leave to appeal from that order and cannot

---

[1] Shelledy was also subsequently removed as guardian for similar behavior of excluding Haight and Boogren, which she appeals in Docket No. 377144. Fraser also appeals his own, subsequent removal as conservator in Docket No. 375802.

challenge it in this appeal. Generally, parties are permitted, in an appeal as of right, to challenge issues involving prior, nonfinal orders. *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009). The only limitation is that the challenged interlocutory order must lead to the final order. *Tomkiw v Sauceda*, 374 Mich 381, 385; 132 NW2d 125 (1965). The probate court's final order removing LeTissier is directly related to its earlier order denying his request for arbitration; having denied the request, the probate court went on to hear testimony and make a decision, which resulted in the final order. Because the orders are related, this Court has jurisdiction to consider this issue. See *id*.

As for LeTissier's challenge, he argues that the settlement agreement required that "[a]ny controversy or challenge to the enforcement of this agreement" be brought before the arbitrator. "Arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (quotation marks and citation omitted). "Accordingly, when interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Id*. "Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning." *Id*. "In considering the scope of an arbitration agreement, . . . a party cannot be required to arbitrate an issue which it has not agreed to submit to arbitration." *Id*. (quotation marks, brackets, and citation omitted).

The plain language of the arbitration clause in the settlement agreement indicates that it applies to challenges to the agreement's enforcement. The agreement concerned the original appointment of LeTissier as conservator. Thus, if the parties wished to challenge the merits of his *appointment*, they had to do so in arbitration. But the settlement agreement did not address LeTissier's future actions *once appointed*. The probate court, therefore, did not err by denying LeTissier's request, because it could not require Haight "to arbitrate an issue which [she had] not agreed to submit to arbitration." *Id*. (quotation marks and citation omitted).

## III. REMOVAL

LeTissier next argues that the probate court erred by removing him for failing to timely produce accounting documents and approving Cooper's fee increase. We disagree.

## A. STANDARDS OF REVIEW

We review a probate court's decision to remove a fiduciary for an abuse of discretion. *In re Conservatorship of Bittner*, 312 Mich App 227, 235; 879 NW2d 269 (2015). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Id*. We review the probate court's factual findings for clear error. *Id*. "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. at 236 (quotation marks and citation omitted). We review issues involving statutory interpretation de novo. *Id*.

B. ANALYSIS

Under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, a conservator is a fiduciary. MCL 700.1104(e). In their fiduciary capacities, conservators must observe the standard of care applicable to trustees. MCL 700.5416.

> A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary. A fiduciary shall observe the standard of care described in section 7803 and shall discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; care and prudence in actions; and segregation of assets held in the fiduciary capacity. With respect to investments, a fiduciary shall conform to the Michigan prudent investor rule. [MCL 700.1212(1).]

MCL 700.7803 mandates that a fiduciary "act as would a prudent person in dealing with the property of another, including following the standards of the Michigan prudent investor rule." The prudent investor rule requires fiduciaries to "invest and manage assets held in a fiduciary capacity as a prudent investor would . . . . To satisfy this standard, the fiduciary must exercise reasonable care, skill, and caution." MCL 700.1502.

A probate court may impose various remedies for a fiduciary's breach of their duty, including removal "as provided" in EPIC. MCL 700.1308(1)(g). Under MCL 700.5414, a probate court "may remove a conservator for good cause, upon notice and hearing[.]" The statute does not define the term "good cause," so this Court may turn to the dictionary. *Sullivan v State*, 328 Mich App 74, 80-81; 935 NW2d 413 (2019). In doing so, we give the term its plain and ordinary meaning. *Id. Black's Law Dictionary* (12th ed) defines the term as "[a] legally sufficient reason." *Merriam-Webster's Collegiate Dictionary* (12th ed) defines it as "a substantial reason put forth in good faith that is not unreasonable, arbitrary, or irrational and that is sufficient to create an excuse for an act under the law." Thus, a probate court may remove a conservator if there is a legally sufficient or substantial reason to do so. Given that MCL 700.1308(1)(g) permits removal for a breach of fiduciary duty, it logically follows that, under EPIC, a conservator's breach of his or her fiduciary duty is good cause for removal. The burden of proof for establishing a breach of fiduciary duty in this context is a preponderance of the evidence. *In re Conservatorship of Murray*, 336 Mich App 234, 246; 970 NW2d 372 (2021).

LeTissier challenges the probate court's determination that he breached his fiduciary duties by approving Cooper's unreasonable fee increase.[2] He argues he satisfied the standard of care

---

[2] LeTissier also challenges the probate court's findings relating to his failure to timely provide accounting documents to Haight and Boogren as well as its findings relating to his conflict of interest in managing the estate's finances as a debtor to the estate. Because, as will be discussed below, LeTissier breached his fiduciary duties by approving Cooper's increased rate, and this breach alone is a sufficient basis for removal, we need not address these arguments, as they are not outcome-determinative.

because he consulted the State Bar of Michigan 2020 Economics of Law Practice Survey. He contends that, because Cooper's increased rate was at the high end—but nevertheless within—the range provided in the survey, it was reasonable.

In support of this contention, he cites *Smith v Khouri*, 481 Mich 519, 530; 751 NW2d 472 (2008), noting that for determining fees customarily charged in the locality for similar services, courts often rely on surveys such as the Economics of Law Practice Surveys. He claims that this is the exclusive test for determining whether an attorney's fee is reasonable. It is not. Information regarding the fees customarily charged in the locality for similar services is only one of many factors courts use to evaluate whether a fee is reasonable. With respect to the full reasonability analysis, Michigan courts "have been required to consider the totality of special circumstances applicable to the case at hand." *Id*. at 529. In these considerations, courts often rely on various factors, only one of which is "the fee customarily charged in the locality for similar legal services[.]" *Id*. at 530 (quotation marks and citation omitted). But the probate court properly considered additional factors in order to "consider the totality of special circumstances applicable" in this case, including (1) the difficulty and novelty of the issues involved and whether the issues required a certain level of skill or expertise, (2) the experience of the attorney performing the services, (3) the expenses incurred by the attorney in representation, and (4) whether representation of a particular client prevented the attorney from handling other matters. *Id*. at 529-530.

The probate court properly found that these factors demonstrated that Cooper's 100% fee increase to $500 was unreasonable when (1) the issues in this case were not novel or difficult so as to require a particular level of expertise, (2) Cooper did not specialize in probate litigation, (3) Cooper did not incur any unusually large expenses in the course of his representation, and (4) Cooper's work in this case did not prevent him from handling other matters in his practice. It further found that, because of her diminished capacity, IL never benefitted from Cooper's representation; instead, the court found that Cooper's role was not to help IL or her estate, but to aid LeTissier in concealing information from Haight and Boogren. Moreover, Cooper's fees did not benefit the estate—they increased its costs.

LeTissier was required to manage IL's finances with "reasonable care, skill, and caution." MCL 700.1502. While it is true that Cooper's fees fall within the general range of fees charged in Oakland County under the survey, LeTissier failed to use reasonable care and caution by failing to further investigate Cooper's 100% increase. In fact, he failed to use reasonable care in reviewing this exact survey by looking at other applicable ranges. For example, the 2020 survey also provides ranges specifically for probate litigation—an area in which Cooper was inexperienced—and the 95th percentile under this category is only $450. Beyond the survey, the facts of this case should have given LeTissier pause when Cooper doubled his rate: Cooper lacked experience in probate litigation, initially charged only $250 per hour, and his services provided little value to IL herself. LeTissier's approval of Cooper's fees without sufficient research into their reasonableness violated his fiduciary duty to manage IL's finances prudently. *Id*. Because the preponderance of the evidence demonstrated that LeTissier breached this duty, the probate court had good cause to remove him. MCL 700.1308(1)(g); MCL 700.5414; *In re Conservatorship of Murray*, 336 Mich App at 246.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense